IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEFFRY L. SMITH, ) | |
| ) | |
| Plaintiff, ) | No. 3:12-cv-00616 |
| ) | |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Brown |
| ROCK-TENN SERVICES, INC., ) | |
| ) | JURY DEMAND |
| Defendant. ) | |

## ORDER

Pending before the Court is Defendant Rock-Tenn Services, Inc.'s Motion for Summary Judgment ("Motion"). (Doc. No. 32.) Plaintiff Jeffry L. Smith filed a Response opposing Defendants' Motion (Doc. No. 41), to which Defendant filed a Reply (Doc. No. 45). For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

  A. *Factual History*[1]

Plaintiff Jeffry Smith was employed by Defendant Rock-Tenn Services, Inc., a corrugated box and packaging materials manufacturer, from August 2, 2010, to September 26, 2011. (Doc. No. 21 ¶ 5.) Upon hire, Plaintiff was informed about Defendant's anti-harassment policies and underwent a training class on sexual harassment in the workplace.

Sometime around the end of 2010 or beginning of 2011, Plaintiff alleges that one of his male co-workers, James Leonard, slapped him on his buttocks during a shift at work. Plaintiff states that he looked and pointed at Leonard to indicate that he did not want Leonard touching

---

[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Response to Defendant's Statement of Material Facts (Doc. No. 40) and Defendants' Reply to Plaintiff's Additional Material Facts (Doc. No. 44).

1

him. Plaintiff alleges that his response was in line with Defendant's anti-harassment policy, which recommends an employee's first step in response to harassment be to approach the harasser and tell them to stop. A few days after the first incident, Plaintiff alleges Leonard grabbed him "in the crack of [his] butt, hard enough that [his] butt was irritated for a couple of days." (Doc. No. 38-3 at 5.) Plaintiff responded by grabbing Leonard's arm, pointing his finger in Leonard's face, and saying "when you touch me again, you're going to cause somebody to get hurt." (*Id.*) At the time, Plaintiff did not report either of the two incidents to anyone at Rock-Tenn.

On March 22, 2011, Leonard was placed on a performance improvement plan for "horseplay-sexual harassment" after another Rock-Tenn employee, Kendrick Roper, reported that Leonard had grabbed him on his buttocks twice. (*See* Doc. No. 39 ¶¶ 5–8.) Management informed Leonard at that time that any further sexual harassment allegations would be grounds for immediate termination.

On June 4, 2011, Plaintiff alleges Leonard came up behind him while he was bent over at a machine at work, grabbed Plaintiff by the hips, and thrust his genitals onto Plaintiff's backside. Plaintiff states that in response, he grabbed Leonard by the throat and held him for approximately 30 seconds before releasing him and walking away. Plaintiff alleges that he immediately reported the incident to his acting supervisor, Clinton Gill, who had Plaintiff continue working while Leonard went on break, and then sent Plaintiff home for the day.

June 6, 2011, Plaintiff returned to work and reported the incident to his immediate supervisor, Devonna Odum and plant supervisor Scott Keck. On this occasion Plaintiff told Keck about all three incidents of harassment by Leonard, and Keck explained that nothing could be done until plant manager Bobby Hunter returned from vacation. Upon his return, Hunter

2

spoke with Plaintiff and Keck about the incidents. Hunter then spoke with Gill and other employees who worked the same shift as Plaintiff and Leonard, none of whom had witnessed the incidents. Hunter and human resources manager Wade Phillips also spoke with Leonard, who denied Plaintiff's allegations and said that he had merely bumped into Plaintiff's side on accident.

When Hunter concluded his investigation, he, Keck, and Phillips determined that Leonard should be terminated. They gave their recommendation to general manager David McIntosh, who was responsible for making the final decision regarding what action to take in response to Plaintiff's complaints. McIntosh determined—without having knowledge of Plaintiff's allegations regarding the first two harassment incidents or Leonard's previous incident involving Roper—that there was not enough evidence to substantiate Plaintiff's claim and thus it would not be appropriate to terminate Leonard. Instead, McIntosh imposed a three-day suspension on Leonard and warned him than any future complaints of horseplay or harassment would result in discharge.

On June 16, 2011, Plaintiff made a written request for leave to seek counseling for anxiety and emotional instability he had been experiencing since the last incident with Leonard. Although Plaintiff had not worked at Rock-Tenn for a full year and thus was not eligible for Family Medical Leave Act ("FMLA") leave, Defendant granted Plaintiff's request for medical leave. A physician diagnosed Plaintiff with post-traumatic stress disorder and certified him to remain on medical leave through October 5, 2011.

Plaintiff states that he kept in touch with Phillips while on leave about his return date, but that, although he did not express it to management, he did not intend to return to work if Leonard was to continue to work the same shifts. (Doc. No. 38-3 at 18.) On an unspecified date, Plaintiff

3

alleges he was told by a coworker that management had taken his picture down from a wall where all employees' photos were hung, at which time Plaintiff assumed his employment had been terminated. Defendant states that management assumed Plaintiff was intending to return to work after his medical leave until it received his claim for unemployment insurance benefits, filed by Plaintiff on September 19, 2011. (*See* Doc. No. 38-1 at 30.)

### B. Procedural History

Plaintiff filed this action against Defendant on June 15, 2012, bringing claims for sexual harassment, discrimination, retaliation, and constructive discharge under the Tennessee Human Rights Act ("THRA") and the Tennessee Public Protection Act ("TPPA"). (Doc. No. 1 ¶¶ 10–19.) On February 28, 2013, Plaintiff filed an Amended Complaint, bringing three claims against Defendant: (1) sexual harassment under the THRA, (2) common law wrongful termination and retaliation under the THRA and the TPPA, and (3) sexual discrimination and harassment under Title VII of the Civil Rights Act of 1964. (Doc. No. 21 ¶¶ 21–27.)

Defendant filed its Motion for Summary Judgment on September 27, 2013 (Doc. No. 32), with a Memorandum in Support (Doc. No. 33), a Concise Statement of Material Facts (Doc. No. 34), and several exhibits (Doc. Nos. 34-1 to 34-9). Plaintiff filed a Response on November 1, 2013 (Doc. No. 41), with a Response to Defendant's Statement of Material Facts and Additional Material Facts (Doc. No. 40), a supporting affidavit (Doc. No. 39), and several exhibits (Doc. Nos. 38-1 to 38-12). Defendant filed a Reply on November 20, 2013 (Doc. No. 45), with a Reply to Plaintiff's Additional Material Facts (Doc. No. 44) and an exhibit (Doc. No. 44-1).

## II. LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

4

moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable fact finder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

While the non-moving party must set forth specific facts showing there is a genuine issue for trial, all reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 248, 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the

court determines that a reasonable fact finder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

### III. ANALYSIS

Defendant moves for summary judgment on all three of Plaintiff's claims. (Doc. No. 32 at 2.) Courts analyze claims under Title VII and the THRA identically, as the "stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996); *see Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008); *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 602 (Tenn. Ct. App. 2007) (finding that the analysis of a hostile work environment claim is the same under Title VII and the THRA). Thus, the Court evaluates Plaintiff's Title VII and THRA sexual harassment claims under Counts I and III together, then analyzes Plaintiff's constructive discharge allegation before reaching his wrongful termination and retaliation claims.

#### A. *Sexual Harassment and Hostile Work Environment*

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). To establish that an employer violated Title VII by creating a hostile or abusive work environment, "an employee must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5)

6

the employer is liable." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

Here, Defendant argues it should be granted summary judgment on Plaintiff's claims that he was subjected to a hostile work environment. Specifically, Defendant contends Plaintiff does not have evidence to show (1) the alleged harassment was based on his sex, (2) it was so severe or pervasive that it created a hostile work environment, or (3) that Defendant failed to respond appropriately, thus making it liable for sexual harassment committed by Plaintiff's coworker. (Doc. No. 33 at 4–9.) Plaintiff responds that he has put forth sufficient evidence to create a genuine issue of material fact regarding all elements of his hostile work environment claim. (Doc. No. 41 at 9–14.) As it is undisputed that Plaintiff has satisfied the first two elements of his hostile work environment claim, the Court evaluates only the last three elements.

1. <u>Harassment Based on Sex</u>

The Supreme Court has held that both men and women are protected under Title VII from discrimination based on sex, and that harassment between members of the same sex is protected under the statute with equal force as harassment between members of opposite sexes. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78–79 (1998). A male plaintiff may establish same-sex harassment as the basis for a hostile work environment claim in any of three ways:

> (1) where the harasser making sexual advances is acting out of a sexual desire; (2) where the harasser is motivated by general hostility to the presence of men in the workplace; and (3) where the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) (quoting *Oncale*, 523 U.S. at 80–81). "The critical issue . . . is whether members of one sex are exposed to disadvantageous

terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Here, the Court finds Plaintiff has provided sufficient evidence to raise a genuine issue of fact as to whether Leonard treated men differently than women in the workplace. Although, as Defendant correctly points out, Plaintiff testified Leonard exposed his buttocks to a group of people that included Plaintiff and one female employee (Doc. No. 38-3 at 17), there is no evidence that Leonard ever touched a female in the manner it is alleged he did his male coworkers. Specifically, Leonard admitted that he "primarily engage[d] in horseplay or poke[d] and push[ed] at . . . primarily men." (Doc. No. 38-5 at 15.) In addition, Roper averred that he "did not see Leonard grab or touch women at work the way he did men. There were at least 3 . . . women working during our shift, but Leonard left the women alone." (Doc. No. 39 ¶ 11.) Because Plaintiff has presented evidence that shows Leonard touched only male employees, the Court finds an issue of material fact exists as to whether men employed by Defendant were exposed to disadvantageous terms or conditions of employment to which female employees were not. *Cf. Rayford v. Ill. Cent. R.R.*, 489 F. App'x 1, 4 (6th Cir. 2012) (finding the plaintiff failed to meet his burden to show harassment was based on sex because he failed to show he was subjected to harassment because of his gender).

2. Creation of a Hostile Work Environment

To prove that alleged sexual harassment created a hostile work environment a plaintiff must show that the environment was both objectively and subjectively offensive, hostile, or abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In deciding whether a plaintiff has met his burden for this prong of the analysis, courts are to determine whether the

8

harassment was "sufficiently severe or pervasive" based on the "totality of the circumstances." *Williams*, 187 F.3d at 562 (6th Cir. 1999) (citing *Harris*, 510 U.S. at 23). The Supreme Court has provided a non-exclusive list of factors for courts to consider under the "totality of the circumstances" analysis, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. In addition, the effect of the conduct on the plaintiff's psychological well-being is "relevant to determining whether the plaintiff actually found the environment abusive." *Id.*

In assessing whether an employer created a hostile work environment under the totality of the circumstances, courts look at the accumulated effect of all incidents of sexual harassment alleged by the plaintiff. *Williams*, 187 F.3d at 563. However, "[w]hether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is quintessentially a question of fact," such that "[s]ummary judgment is appropriate only if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (internal quotation marks omitted).

Here, Plaintiff argues that Leonard's conduct was sufficiently severe to create a hostile work environment. (Doc. No. 41.) With regard to severity, conduct involving an "element of physical invasion" is considered more severe than words alone. *Hawkins*, 517 F.3d at 334. Plaintiff states Leonard touched him on three separate occasions, despite Plaintiff's verbal and physical warnings to Leonard not to touch him. (Doc. No. 41 at 2–4.) Plaintiff also states that each subsequent alleged incident was more severe than the preceding one, and that he told management about all three incidents immediately after the third time Leonard touched him, in

9

accordance with Defendant's sexual harassment policy. (*Id.*) Following the last incident, Plaintiff had to request medical leave to receive counseling for anxiety associated with the encounter. (*Id.* at 5.) While on leave, Plaintiff's doctor diagnosed him with Post-Traumatic Stress Disorder ("PTSD"), stemming from the last incident with Leonard. (*See* Doc. No. 38-2 at 7.) Based on Plaintiff's actions and resulting psychological stress from the incidents with Leonard, the Court finds Plaintiff has met his burden to show a subjectively offensive, hostile, or abusive environment was created by Leonard's conduct. The Court further finds that a triable issue exists as to whether a reasonable person would consider offensive, hostile, or abusive, repeated unwanted touching by a coworker with a history of harassing other male employees and who management had failed to remove from the work environment.

### 3. Employer Liability

To establish that an employer is liable for sexual harassment by a coworker, a plaintiff must show "that the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action." *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001) (citation omitted). The Supreme Court determined that negligence on the part of an employer may be enough to establish liability for harassment by a supervisor. *See Faragher*, 524 U.S. at 780, 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758–59 (1998). However, the Sixth Circuit has since clarified that, unlike harassment by a supervisor, for the purposes of employer liability an employer response to a claim of coworker sexual harassment will only be actionable if it "manifests indifference or unreasonableness in light of the facts." *Hawkins*, 517 F.3d at 338 (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872–73 (6th Cir. 1997)).

10

The parties today do not dispute that Defendant was aware of Plaintiff's claims of sexual harassment by Leonard, as Plaintiff reported the incidents to Defendant. Thus, the only question to be resolved is whether Plaintiff has raised a genuine issue of fact regarding whether Defendant's response manifested indifference or unreasonableness in light of the facts. The Court finds Plaintiff has met his burden.

Plaintiff reported the three incidents of sexual harassment to Keck and Odum on June 6, 2011. (Doc. Nos. 38-3 at 14; 41 at 4.) On June 10, 2011, the plant manager, Hunter, was notified and investigated the allegations, including speaking with Plaintiff, Leonard, and several other employees who worked the night of the last incident. (Doc. No. 38-10 at 4, 6.) After this investigation, Hunter, Keck, and Phillips jointly determined Leonard should be terminated. (Doc. Nos. 38-1 at 22; 38-10 at 7.) Ultimately, however, the general manager, McIntosh, was in charge of making the final decision about how to handle the situation. (*Id.* at 7.) At the time of McIntosh's determination that Leonard should be allowed to return to work, McIntosh was not aware of the first two incidents of sexual harassment alleged by Plaintiff or Leonard's prior discipline for sexual harassment of Roper. (Doc. No. 38-8 at 4–5.) McIntosh testified that, had he known about Leonard's previous infraction and that Plaintiff had alleged multiple incidents of sexual harassment, McIntosh would have investigated further rather than taking Leonard at his word and allowing him to return to work. (*Id.* at 5.) The Court finds that Defendant's failure to fully investigate Plaintiff's allegations, in light of the fact that various managers were aware of material facts not disclosed to the decision-maker, creates an issue of fact regarding whether Defendant's missteps amounted to indifference or unreasonableness.

The Court finds Plaintiff has demonstrated a material factual dispute as to whether Defendant violated Title VII by creating a hostile work environment. Accordingly, Defendant's

11

Motion is **DENIED** with respect to Plaintiff's Title VII and THRA hostile work environment claims.

*B. Wrongful Termination and Constructive Discharge*

Defendant argues that Plaintiff resigned and thus his common law wrongful termination, THRA, Title VII, and TPPA retaliation claims must fail. Plaintiff argues that Defendant's decision not to make any effort to assist Plaintiff in returning to work amounts to a constructive discharge, which is the basis for the wrongful termination and retaliation claims.

When an employee resigns, he can show he was constructively discharged by demonstrating that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 639–40 (6th Cir. 2010) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). In order to prove he was constructively discharged, a plaintiff must show "1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001) (internal quotation marks, brackets, and ellipsis omitted). The Court must examine "the employer's intent and the employee's objective feelings," *id.* at 569, and "[a] plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee," *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002). Further, "[a]n employee who quits has 'an obligation not to assume the worst, and not to jump to conclusions too fast.'" *West*, 374 F. App'x at 640 (quoting *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991)).

12

Viewing the facts of this case in the light most favorable to Plaintiff, sufficient evidence does not exist to create a genuine issue of material fact as to whether Plaintiff was constructively discharged. To assess the first prong of a constructive discharge inquiry, the Sixth Circuit has adopted several factors courts are to consider to determine whether a defendant deliberately created objectively intolerable working conditions for a plaintiff:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan*, 259 F.3d at 569. Here, Plaintiff states that after the last incident with Leonard, he requested and was granted leave to deal with emotional and mental issues caused by the harassment. (Doc. No. 38-3 at 16–17.) The evidence shows that at no point while Plaintiff was on leave did Defendant take any action to alter his employment status,[2] and Plaintiff has produced no evidence that Defendant took any steps to *deliberately* create an objectively intolerable work environment. In fact, Plaintiff's argument—that McIntosh's decision not to fire Leonard, made without all the relevant facts, amounted to negligence—negates his argument that Defendant deliberately created intolerable working conditions, as McIntosh's inadvertent failure to consider all facts surrounding Leonard cannot also be a deliberate action, calculated to create intolerable working conditions for Plaintiff.

Plaintiff has also failed to produce evidence that Defendant's choice not to fire Leonard was made with the intent to force Plaintiff to quit. McIntosh testified that, based on the

---

[2] Although Plaintiff testified in his deposition that a coworker told him that his photo had been taken down from the wall of employee photos, Plaintiff does not give the name of the coworker, or the time frame when he claims this occurred. Thus, the Court finds Plaintiff's hearsay statement is not sufficient to establish a genuine issue of fact as to whether Defendant altered Plaintiff's employment status prior to Plaintiff filing for unemployment insurance benefits.

13

information he received about the incident, he did not feel there was enough evidence to substantiate Plaintiff's claim of the third incident of sexual harassment, and thus sufficient grounds did not exist to terminate Leonard. Plaintiff argues that he was aware while he was on leave that Leonard had not been fired or transferred, and that he would not under any circumstances have gone back to work as long as Leonard was still there. However, Plaintiff testified that he never told management at Rock-Tenn that he would only come back to work if Leonard was terminated. (Doc. No. 38-3 at 18.) Plaintiff also testified that he communicated with Phillips multiple times while he was on leave and that he told Phillips that he was medically unable to work. (*Id.*)

Plaintiff was granted FMLA leave and a doctor deemed him medically unable to return to work before October 5, 2011, due to PTSD associated with the incident. (Doc. No. 38-2 at 7.) However, with no indication from Defendant that his medical leave status had been changed, Plaintiff filed for unemployment insurance benefits on September 19, 2011. (Doc. Nos. 38-1 at 30; 38-2 at 8.) Although the Tennessee Department of Labor & Workforce Development eventually found that Plaintiff was eligible for unemployment insurance benefits, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant deliberately created objectively intolerable working conditions or that it did so with the intent of compelling Plaintiff to resign. Therefore, Plaintiff cannot sustain his claim that he was constructively discharged, which is fatal to his common law wrongful termination and THRA, Title VII, and TPPA retaliation claims.

    1. <u>Tennessee Public Protection Act</u>

Under the TPPA "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about illegal activities." Tenn. Code Ann. § 51-1-

304(b) (2014). To establish a claim for retaliatory discharge under the TPPA, a plaintiff must show (1) that he was an at-will employee of the employer; (2) that he was *discharged*; (3) that his discharge was for refusing to participate in or remain silent about illegal activities; and (4) that his refusal was the sole reason for his discharge. *Lawson v. Adams*, 338 S.W.3d 486, 493 (Tenn. 2010).

Because Plaintiff has failed to meet his burden to establish constructive discharge, he cannot make a prima facie case of retaliatory discharge under the TPPA. Accordingly, Defendant's Motion is **GRANTED** and Plaintiff's TPPA retaliation claim is **DISMISSED**.

2. Tennessee Human Rights Act and Title VII

To establish a prima facie claim of retaliation under the THRA or Title VII a plaintiff must show (1) he engaged in activity protected under the THRA or Title VII; (2) the defendant was aware the plaintiff was exercising his rights; (3) thereafter, the defendant took an adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

The only adverse employment action Plaintiff claims Defendant took in this case was constructively discharging him. Because the Court has found Plaintiff failed to meet his burden to establish he was constructively discharged, Plaintiff cannot make a prima facie case of THRA or Title VII retaliation. Accordingly, Defendant's Motion is **GRANTED** and Plaintiff's THRA and Title VII retaliation claims are **DISMISSED**.

3. Common Law Wrongful Termination

To prove a common law retaliatory discharge claim the plaintiff must establish four elements similar to those necessary for retaliatory discharge under the TPPA: (1) that there was

15

an employment-at-will relationship; (2) that the employee was *discharged*; (3) that the motivation for the discharge was because the employee attempted to exercise a statutory or constitutional right, or for a reason that violates clear public policy; and (4) that the exercise of protected rights or compliance with clear public policy was a substantial factor in the decision to discharge the employee. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002).

For the same reasons Plaintiff's other retaliatory discharge claims fail, his common law claim also falls short. Plaintiff has not presented sufficient evidence to establish that he was discharged and thus cannot prove an element necessary for a Tennessee common law wrongful termination claim. Accordingly, Defendant's Motion is **GRANTED** and Plaintiff's common law wrongful termination claim is **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 32) is **GRANTED** with respect to Plaintiff's claims for common law wrongful termination and retaliation under the TPPA, THRA, and Title VII, and **DENIED** with respect to Plaintiff's Title VII and THRA hostile work environment claims. By this Order, the parties' Motion to Ascertain Case Status (Doc. No. 48) is hereby **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this 17th day of January, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

16