IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JEFFRY L. SMITH,

    Plaintiff,

v.                                                Docket No:3:12-cv-0616

ROCK-TENN SERVICES, INC.,        Judge Nixon

    Defendant.

_____/

## PLAINTIFF'S TRIAL BRIEF

Plaintiff submits this trial brief in anticipation of the jury trial set for February 4, 2013. The claims to be tried are claims for harassment/hostile work environment on the basis of Plaintiff's sex brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*. ("THRA").

    **I.    CONCISE STATEMENT OF FACTS**

Jeff Smith was unable to safely perform his job due to the hostile work environment created by co-worker Jim Leonard. Defendant knew that its employee, Leonard, was a serial sexual harasser of other men in the workplace. Just three months before the final reported incident with Mr. Smith, Leonard had been given a formal counseling for "sexual harassment" because of unwanted touching of another male employee while he was standing at a urinal. Despite having this information, and knowledge that on three occasions Leonard physically assaulted Mr. Smith, each incident escalating in severity, Defendant continued to employ Leonard. In accordance with the employee handbook, Smith addressed the first two incidents

1

directly with Leonard. After the third and final incident, where Mr. Smith was grabbed from behind and "hunched on" by Leonard causing Mr. Smith to defend himself by grabbing Leonard by the throat, Mr. Smith had to take time off work because he was no longer able to safely perform his job with Leonard around. Smith's manager, Hunter, recognized the severity of Smith's reaction to the assault and recommended he receive EAP counseling about the sexual harassment and assaults. Later, Smith qualified for short term disability to receive counseling to manage his anger, depression and PTSD diagnosis related to the sexual harassment and assaults.

After Smith's report, Defendant's HR manager, plant manager and operations manager agreed Leonard should have been terminated. However, the final decision maker, Defendant's general manager, McIntosh, did not consider Leonard's prior write up, the two other assaults Plaintiff experienced, or Plaintiff's written account of the assaults and the impact it had on him or the safety of the workplace, and instead returned Leonard to work after two days' off for "time served." Because Defendant refused to provide a safe work environment from the serial harasser, Leonard, Smith was unable to return to work. Defendant finally terminated Leonard's employment after his deposition in July 2013 for lying, exposing himself and touching other male employees. Defendant's actions of keeping a serial harasser in the workplace caused Plaintiff to suffer such severe emotional harm that he was diagnosed with PTSD and anxiety, and he continues to take medication to date to be treated for the unsafe and hostile work environment he experienced at RockTenn.

## II. CONCISE STATEMENT OF THE ISSUES

1. Whether Plaintiff was subjected to a hostile work environment based on his sex.
2. Whether Plaintiff is entitled to damages, *i.e.,* compensatory, punitive, prejudgment interest, award of attorneys fees.

2

### III. LAW CONCERNING OUTSTANDING ISSUES OF FACT

In order to prevail on a claim of sexual harassment, Smith must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment on the basis of his sex; (3) the harassment was based on his sex; (4) the harassment created a hostile work environment, and; (5) Defendant knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).[1] A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).

### *The Harassment Complained of was Based on Sex*

Where members of one sex are exposed to disadvantageous conditions of employment that members are the other sex are not exposed to can create a hostile work environment on the basis of sex in violation of the law. *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 505 (6th Cir. 2001) (in male on male harassment case, testimony that male harasser did not touch females, but did touch male employees demonstrated that men were exposed to "disadvantageous conditions of employment"). There is nothing in Title VII that bars a claim of discrimination because the plaintiff and person charged with harassment are of the same sex. *Oncale v. Sundowner Offshore Svcs., Inc.,* 523 U.S. 75, 79 (1998). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. at 21). "But harassing conduct need not be motivated by sexual

---

[1] Defendant correctly recognizes that claims under the THRA and analyzed the same as claims under Title VII. ECF No. 33 at 4.

3

desire to support an inference of discrimination on the basis of sex." *Id.* at 80. The law forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. *Id.* at 81.

### *The Harassment Complained of Created a Hostile Work Environment*

The "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships…" *Oncale,* 523 U.S. at 82. The Sixth Circuit has been clear that it rejects "the view that the standard for sexual harassment varies depending on the work environment" as Defendant suggests. *Williams v. Gen'l Motors Corp.,* 187 F.3d 553, 564 (6th 1999). To be sure, the Circuit considered that the behavior alleged in that case would not be tolerated in its courthouse, nor should it be tolerated at the defendant's manufacturing plant. *Id.*

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Both an objective and subjective test must be met; in other words, the conduct must be so severe *or* pervasive as to constitute a hostile or abusive working environment both to a reasonable person and the actual victim. *Id.* at 21-22. The court must consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris,* 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, (1998) (internal quotation marks and citation omitted). The effect of the incidents on

the employee's psychological well-being is a consideration. *Harris,* 510 U.S. at 23. As recognized by the Sixth Circuit:

> The [severe or pervasive] analysis cannot carve the work environment into a series of discrete incidents and measure the harm adhering in each episode. Rather, a holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes.

*Williams,* 187 F.3d at 563 (citing *Robinson v. Jacksonville Shipyards, Inc.,* 760 F. Supp. 1486, 1524 (M.D. Fla. 1991)).

Escalating physical assaults can be objectively considered severe. *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 334 (6th Cir. 2008) (The Sixth Circuit has recognized that an "element of physical invasion" is more significant than mere harassing comments). Further, behavior that interferes with an employee's job performance can subjectively be perceived as abusive. *Harris,* 510 U.S. at 21, 23 (effect of the incidents on the employee's psychological well-being is a consideration). The context must be examined to determine whether an employee endured a hostile work environment. *Harris,* 510 U.S. at 23 ("whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances").

### *Knowledge of and Failure to Take Prompt and Appropriate Corrective Action.*

An employer can be held liable where it (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action. *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518. "[A] company may be held liable for coworker harassment if its 'response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Hawkins,* 517 F.3d at 338 (quoting *Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 873 (6th Cir. 1997)). "[A] response is generally adequate . . . if it is

5

'reasonably calculated to end the harassment.'" *Id.* at 340 (quoting *Jackson v. Quanex Corp.,* 191 F.3d 647, 663-64 (6th Cir. 1999)). Importantly, "[a]n employer's responsibility to prevent future harassment is heightened where it is dealing with a known serial harasser and is therefore on clear notice that the same employee has engaged in inappropriate behavior in the past." *Hawkins,* 517 F.3d at 341.

## IV. EVIDENTIARY ISSUES

*Adverse Witnesses*

Plaintiff contends that witnesses Hunter, Phillips, McIntosh, and Leonard are adverse witnesses and thus, Plaintiff should be allowed to ask them leading questions on direct examination during his case in chief. Likewise, Defendant should not be allowed to ask its own manager, former managers and Leonard leading questions on cross because to do so would be "in form only." Phillips and McIntosh are former managers (both retired after the events in question), Hunter is a current manager and Leonard is the named harasser and was formerly employed (he was terminated after his deposition).

"Ordinarily the Court should allow leading questions:..(2) when a Party calls a hostile witness, an adverse party or a witness identified with an adverse party." FRE 611(c)(2). Case law suggests that a managing agent or employee of a party normally is classified as "a witness identified with an adverse party" pursuant to Rule 611(c).

> It seems obvious that, to be "identified" with an adverse party, a witness must have or had some relationship with that party. The statutory predecessor of Rule 611(c), Federal Rule of Civil Procedure 43(b), required a formal legal relationship, permitting leading on direct only if the witness was "an officer, director, or managing agent" of an adverse party. ***However, the drafters of Rule 611(c) expressly stated their intent to "enlarge the category of persons thus callable."*** As a consequence, the courts have held that a party's employee and girlfriend are sufficiently "identified" with that party to permit leading on direct examination. Similarly, in a criminal prosecution the courts have concluded that

6

an investigating officer and even an informant are "identified" with the prosecution.

28 Fed. Prac. & Proc. Evid. § 6168 (1st ed.)(emphasis added).

"Ordinarily an officer, director, managing agent, or even an employee of a party, and a relative of the party should be considered a witness identified with an adverse party and thus subject to leading questions." 4 Handbook of Fed. Evid. § 611:8 (7th ed.). *See, e.g., Chonich v. Wayne County Cmty. Coll.*, 874 F.2d 359, 368 (6th Cir. 1989) (trial court did not abuse its discretion in allowing plaintiff's attorney to treat former president and personnel director as adverse or hostile witnesses pursuant to Rule 611(c)); *Haney v. Mizell Memorial Hosp.*, 744 F.2d 1467, 1478 (11th Cir. 1984) (trial court abused its discretion in refusing to permit plaintiff to ask leading questions during direct examination of nurse who was employed by defendant and present when the alleged malpractice was committed). Therefore, Plaintiff's counsel should be permitted to ask Hunter, McIntosh, Phillips or Leonard leading questions during direct examination in the presentation of evidence in Plaintiff's case in chief.

Rule 611 of the Federal Rules of Evidence provides in part that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth . . . ." Fed. R. Evid. 611(a). Rule 611(c) provides that "[o]rdinarily" leading questions are permitted on cross-examination; however, the Advisory Committee Notes demonstrate that the Court may prohibit their use when the cross-examination is "in form only." The notes state, "The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the "cross-examination" of a party by his own counsel after being called by the opponent . . . ." Fed. R. Evid. 611(c), Adv. Comm. Notes. Accordingly, Defendant's counsel

7

should not be permitted to ask leading questions of Hunter, McIntosh, Phillips or Leonard on cross during Plaintiff's case in chief.

## V. RECOVERABLE DAMAGES

**Compensatory damages.** These include damages for emotional distress and anxiety, embarrassment and humiliation, inconvenience and loss of enjoyment of life, among other things. 42 U.S.C. § 1981a. The jury determines the amount of compensatory damages. Compensatory damages are capped at $300,000 under Title VII under § 1981a. There is no cap in this case, however, because the caps do not apply to compensatory damages awarded under the THRA. *Pollard v. E.I. Dupont de Nemours Co.*, 532 U.S. 843, 121 S. Ct. 1946, 1951 (2001); *Hall*, 337 F.3d at 679; *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 570-71 (3rd Cir. 2002); *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 511 (9th Cir. 2000).

**Punitive damages.** Title VII allows for punitive damages if the plaintiff demonstrates that the defendant discriminated against him "with malice or with reckless indifference to [his] federally protected rights . . . ." 42 U.S.C. § 1981a(b)(1); *Hall*, 337 F.3d at 673 (quoting *Kolstad v. Am. Dental Assn.*, 527 U.S. 526, 535, 119 S. Ct. 2118, 144 L.Ed.2d 494 (1999) (rejecting argument that defendant's conduct must be "egregious" to support punitive damages award)). The jury determines whether punitive damages are appropriate, and also the amount. *Kolstad*, 527 U.S. at 532. The damage caps in 42 U.S.C. § 1981a apply to punitive damages under Title VII. There are no punitive damages available under the THRA. *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34, 35- 36 (Tenn. 1997).

**Interest.** Should he prevail, Plaintiff would be entitled to prejudgment interest on all damages and equitable relief awarded. 42 U.S.C. § 1981a(b)(2) (incorporating 42 U.S.C. §

2000e-5(g)); *Loeffler v. Frank*, 486 U.S. 549, 554-56 (1988); *Thurman v. Yellow Freight Systems, Inc*., 90 F.3d 1160, 1170 (6th Cir. 1996); *Shore*, 42 F.3d at 379-80. The Court determines the amount. *Id.* The interest on the amounts awarded is compounded annually. *EEOC v. Kentucky State Police Dept*., 80 F.3d 1086, 1097-98 (6th Cir. 1996), *cert denied*, 519 U.S. 63, 117 S. Ct. 385, 136 L. Ed. 2d 302 (1996); 28 U.S.C. § 1961; *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998).

**Attorneys' fees, costs and expenses.** Should he prevail, Plaintiff would be entitled to reasonable attorneys' fees, costs and expenses under Title VII and the THRA. *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 944-45 (6th Cir. 2000), *rev'd on other grounds*, 532 U.S. 843 (2001); *Thurman*, 90 F.3d at 1169-70. The Court determines the amount. *Id.*

Respectfully submitted,

**COLLINS LAW FIRM**

*/s Heather Moore Collins*
Heather Moore Collins, BPR # 026099
2002 Richard Jones Rd., Suite 200-B
Nashville, Tennessee 37215
615-724-1996
615-691-7019 (fax)
heather@hmcollinslaw.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been filed this 19th day of January 2014 with the United States District Court, Middle District of Tennessee by using the CM/ECF system and notice of such electronic filing will be electronically mailed to Attorney for Defendant, Hillary Klein, 736 Georgia Avenue, Suite 300, Chattanooga, TN 37402 at Hillary.Klein@huschblackwell.com.

                                           */s/ Heather Moore Collins*
                                           Heather Moore Collins