IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEFFRY L. SMITH, | ) |
|     Plaintiff, | ) Docket No.: 3:12-cv-00616 |
| | ) |
| v. | ) Judge Nixon |
| | ) |
| ROCK-TENN SERVICES INC. | ) Magistrate Judge Brown |
| | ) |
|     Defendants. | ) (Jury Trial Requested) |

## DEFENDANT'S PRETRIAL BRIEF

Pursuant to the Courts January 13, 2014, Order, Docket No. 53, Defendant Rock-Tenn Services, Inc. ("Rock-Tenn") hereby submits the following pretrial brief.

### I. CONCISE STATEMENT OF THE FACTS

The Court granted Rock-Tenn's motion for summary judgment on Plaintiff's wrongful discharge and retaliation claims. As such, the only remaining claim is one for hostile work environment sexual harassment which Plaintiff (a male) alleges based on three alleged acts of misconduct by co-worker James Leonard (also a male). The first two of three incidents involved Leonard allegedly slapping and grabbing Smith on the buttocks, and are generally undisputed (although Leonard characterized his actions as just joking around to lighten the mood and pass the time in a plant where the hours got long and the work hot and monotonous). It is likewise undisputed that Plaintiff did not report the first two incidents to Rock-Tenn until after Rock-Tenn initiated an investigation of the third incident, once reported by Plaintiff.

The third alleged incident, which occurred at least four months after the first two incidents, is very much in dispute. Plaintiff contends that Leonard "got [Plaintiff] by the hips and was 'hunching on' [his] tail with his privates." Plaintiff described this as a "split second" thing. This incident is referred to as the "Saturday incident" herein. Leonard's description of the

1

Saturday incident is much different than that of Plaintiff's. According to Leonard, Plaintiff believed he was leaving early that night – a Saturday during which they were already working overtime (note: Plaintiff, admittedly, did not like working on Saturdays). Plaintiff told Leonard he had plans with his wife. Leonard explained that Plaintiff became upset when he did not get to leave early as expected. Leonard went up behind him, leaned in and said, "are you okay?" (in a sarcastic tone). According to Leonard, he was standing on Plaintiff's side and, in the loud plant where employees wear earplugs, was indeed close to Plaintiff and indeed touched his right shoulder/peck to Plaintiff's back when he leaned in to give Plaintiff a hard time. Leonard specifically denies thrusting his genitals into Plaintiff's backside, although it is possible Plaintiff may have bumped into him.

Leonard testified that he "apparently got too close for comfort." What happened next is not in dispute: Plaintiff grabbed Leonard by the throat and said "don't ever touch me again." According to Plaintiff, Plaintiff "almost killed" Leonard, but caught himself before he did, and then went outside to "cool off." The events that followed this cooling off period are in dispute. According to Leonard's testimony, Plaintiff returned and told Leonard everything was fine and there was no need to tell management about what had happened. Plaintiff denies any such statement. Notably, however, the statement is supported by the testimony of lead man Clinton Gill. Gill testified that he observed Plaintiff angrily walking through the facility. When he asked Plaintiff what was wrong, Plaintiff explained that Leonard had tried to hug him and, as a result, he had lost his temper. According to Gill, Plaintiff told Gill there was no reason to report anything, as he had handled the situation. Gill, however, told Plaintiff he had no choice but to report it (and, thereafter, indeed reported what Plaintiff had told him).

2

Upon learning about the Saturday incident, Rock-Tenn conducted a prompt investigation. As noted above, it was only at this time that Plaintiff reported the earlier two incidents of Leonard touching him to management. In its investigation, Rock-Tenn Plant Manager Bobby Hunter spoke with numerous employees on the production floor who reported that Leonard joked around, but that they had not witnessed anything of a sexual nature. When Rock-Tenn questioned Leonard about the incident, he explained his version of the story: that he was standing behind Plaintiff and that perhaps Plaintiff had bumped into him. Leonard specifically denied both during the investigation having thrust his genitals into Plaintiff's backside, and maintained that Plaintiff may have bumped into him.

Based on the varying versions of the story and numerous employees' feedback, then-General Manager David MacIntosh concluded that there was not sufficient evidence to confirm the Saturday incident occurred in the manner reported by Plaintiff. He, therefore, determined that discharge would be too harsh of a penalty, and instead decided that Leonard would be returned to work after a three-day, unpaid, disciplinary suspension.

After the Saturday incident, Plaintiff worked for a few days and then took time off to assist his brother who was undergoing emergency heart surgery. Thereafter, Plaintiff initiated and Rock-Tenn approved leave of absence (despite the fact that Plaintiff was not FMLA eligible due to his less than one year of service).

## II. CONCISE STATEMENT OF THE ISSUES

The issues for trial are whether: (1) the three incidents on which Plaintiff bases his claims indeed occurred; (2) whether the conduct on which Plaintiff complains was based on his sex; (3) whether Plaintiff subjectively found the conduct on which Plaintiff bases his claims to be sufficiently severe or pervasive to alter the conditions of his employment, and whether such

conduct indeed altered the conductions of his employment; (4) whether a reasonable person would find the conduct on which Plaintiff bases his claims to be sufficiently severe or pervasive to alter the conditions of employment; (5) whether Rock-Tenn took prompt and appropriate corrective action upon learning of the conduct on which Plaintiff bases his claims; and (6) whether Plaintiff is entitled to an award of compensatory damages and/or punitive damages (based solely on his sexual harassment claim), and, if so, in what amount.

### III. STATEMENT OF THE PROPOSITIONS OF LAW ON WHICH DEFENDANT RELIES

Plaintiff asserts sexual harassment claims under Title VII of the Civil Rights Act of 1964, and pursuant to the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* The same legal analysis applies to sexual harassment claims brought pursuant to either statute. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). In order to bring a sexual harassment claim based on a hostile working environment, a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Plaintiff's claim fails at (3), (4) and (5).

**A. The alleged "harassment" was not based on sex.**

First, Plaintiff has no evidence to suggest Leonard targeted him for harassment because of his sex. In fact, Leonard testified that he engaged in the acts about which Plaintiff complains as a way to lighten the mood and pass the time. (SOF 13) Plaintiff can offer no facts to refute Leonard's testimony in this regard. This case is similar, although with less egregious allegations, to a case in which the Eighth Circuit upheld the grant of summary judgment on a plaintiff's

4

harassment claims where the plaintiff was "backhanded in the scrotum" by a co-worker on several occasions. *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822 (8th Cir. 2003). In that case, the Eighth Circuit upheld the grant of summary judgment on the grounds that the plaintiff "offered no evidence of [the co-worker's] motivation, much less that [the co-worker] was motivated by hostility toward men." *Id.* (citing *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 501, 522 (6th Cir. 2001) for rejecting a same-sex hostile-work-environment claim where "plaintiff had been grabbed or patted in genitals or buttocks on at least two occasions, concluding conduct was gross, vulgar, male horseplay in a male workplace," but where there was no proof the harasser was "motivated by general hostility to presence of men in workplace.").

On this point, Justice Scalia's comments in the landmark case of *Oncale* are instructive. There, attempting to guide lower courts as to when harassment is specifically because of "sex," Justice Scalia cautioned:

> The statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. . . . We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace--such as male-on-male **horseplay** or intersexual flirtation--for discriminatory "conditions of employment."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (emphasis added). Justice Scalia then reasoned social context must weigh heavily in the balance. For example, in a situation in which a coach smacks a professional football player's buttocks in the locker room before he heads to the field, Scalia easily identifies this as not sexual harassment. *Id.* at 81-82. He ultimately concludes the opinion by characterizing the legal determination as one that should be obvious, stating, "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members

5

KCP-4441036-1
Case 3:12-cv-00616   Document 62   Filed 01/20/14   Page 5 of 11 PageID #: 556

of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 82.

Here, because Plaintiff alleges nothing more than "male-on-male horseplay," he fails to establish element three—that the harassment was based on Plaintiff's sex.

**B.     The alleged harassment did not create a hostile working environment.**

Second, Plaintiff cannot establish the alleged harassment created a hostile working environment. This is critical because, even if Plaintiff demonstrate that the alleged harassing conduct was based on his sex, for the harassment to be actionable, he must show that the workplace was so "permeated with discriminatory intimidation, ridicule and insult that [it was] sufficiently severe or pervasive to alter the conditions of his employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted).

In assessing the totality of the circumstances to determine whether alleged "harassment" is actionable, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The conduct is evaluated both objectively and subjectively: it "must be severe or pervasive enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (internal citations omitted). The alleged conduct must be extreme enough to amount to a change in the "terms and conditions of employment." *Harris*, 510 U.S. at 21. "[I]solated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted, parenthetical in original).

The conduct about which Plaintiff complains was not sufficiently severe or pervasive to alter the terms or conditions of Plaintiff's employment—either subjectively or objectively. As noted above, Plaintiff alleges three isolated incidents of harassment over an approximate three-month span. These incidents are insufficient for a jury to find the purported harassment was severe or pervasive. Indeed, the Sixth Circuit has consistently rejected any invitation to convert Title VII into a "code of workplace civility." *Grace v. USCAR & Bartech Tech. Servs., LLC,* 521 F.3d 655, 679 (6th Cir. 2008). To illustrate this point, the court in *Wheeler v. Brady Corp.*, 712 F.Supp.2d 801, 823-24 (E.D. Wis. 2010), cites numerous cases where certain types of conduct, although inappropriate for most workplaces, simply do not amount to a hostile work environment. *See, e.g., Saxton v. AT & T,* 10 F.3d 526, 528-35 (7th Cir.1993) (finding no hostile work environment where a supervisor placed his hand on the plaintiff's leg above the knee several times, rubbed his hand once along the plaintiff's upper thigh, kissed her for two to three seconds until the plaintiff pushed him away, and three weeks later "lurched" at the plaintiff from behind some bushes); *Weiss v. Coca-Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir.1993) (finding no hostile work environment where a supervisor asked the plaintiff on dates, called her a "dumb blond," put his hand on her shoulder several times, told her she was beautiful, placed "I love you" signs in her work area and attempted to kiss her in a bar); *Hilt-Dyson v. City of Chi.,* 282 F.3d 456, 463-64 (7th Cir.2002) (considering the plaintiff's allegations that her supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer, even taken together, insufficient to create an inference of a hostile work environment); *Adusumilli v. City of Chi.,* 164 F.3d 353, 361-62 (7th Cir.1998) (concluding "four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks," teasing, ambiguous comments, and staring and attempting to make eye

7

contact were not sufficiently severe or pervasive); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir. 1995) (holding that one instance where the company president rubbed his foot against the plaintiff's leg and another where he grabbed the plaintiff's buttocks "crude" and "offensive," but not sufficiently severe).

The three isolated incidents, even as alleged by Plaintiff, are similar to and generally less serious than the examples above. Leonard's alleged conduct of slapping Plaintiff on the tail and grabbing his buttocks may have been unwelcome or inappropriate, but was by no measure extreme and did not create an abusive work environment for Plaintiff. Moreover, in most of the examples listed above where courts did not find the inappropriate and offensive conduct severe or pervasive, the alleged harasser was a supervisor or even the company president. In this case, Plaintiff alleges misconduct by a co-worker, making the conduct even less abusive or capable of altering the conditions of employment. Likewise, even if Plaintiff can prove the Saturday incident occurred in the way he alleges (which is in dispute), one isolated incident of crude conduct does not rise to the level of severe, pervasive, or abusive. Even if Plaintiff found it subjectively severe, a reasonable person would not find this one isolated incident hostile or abusive, or so severe as to alter the conditions of Plaintiff's employment.

Because the three alleged isolated incidents cannot amount to a hostile work environment, Plaintiff fails to establish the fourth element of his harassment claims, as required for a Title VII claim for harassment.

### C. There is no basis for employer liability.

Third, even if Plaintiff could establish that the Saturday incident occurred as he alleged, and even if that were sufficiently severe to support an actionable claim, he would also have to demonstrate that Rock-Tenn failed to respond when it learned about the conduct with prompt and

8
KCP-4441036-1
Case 3:12-cv-00616   Document 62   Filed 01/20/14   Page 8 of 11 PageID #: 559

appropriate corrective action.  *Davis v. Monsanto Chemical Co.,* 858 F.2d 345 (6th Cir. 1988); *see also Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31-32 (Tenn. 1996).  As detailed in the factual summary, Rock-Tenn promptly acted to investigate the complaint and thereafter took prompt remedial action against Leonard, including a three-day unpaid suspension.  That remedial action was effective, as there is no evidence to suggest Leonard engaged in any conduct like that alleged by Plaintiff following the disciplinary suspension he received.  That Plaintiff would rather Leonard have been terminated is of no consequence.  What matters is that Rock-Tenn took remedial action, and that remedial action was effective.  Plaintiff has offered no evidence to the contrary and therefore his claim fails on the fifth element.

## IV.  EVIDENTIARY ISSUES

Rock-Tenn refers to the Court to its contemporaneously filed Motion *in Limine* wherein it requests that Plaintiff be instructed not to refer to, interrogate witnesses concerning, attempt to offer into evidence through documentation or otherwise, or convey to the jury in any manner, either directly or indirectly, evidence regarding: (1) alleged bad acts by Leonard directed towards others – about which Rock-Tenn was not aware and which Plaintiff did not witness; (2) the circumstances of Plaintiff's separation, post-Rock-Tenn period of unemployment, medical bills and heart condition, and/or financial difficulties; (3) the "cause" determination rendered by the EEOC; and (4) elicited through testimony from undisclosed witnesses.

## V.  DAMAGES RECOVERABLE

Because the only remaining claim is one for hostile work environment harassment, recoverable damages are limited to compensatory damages for emotional distress and attorneys fees. Rock-Tenn vehemently objects to the submission of punitive damages under the facts of this case.

By way of explaination, Title VII allows a jury to award punitive damages "if the complaining party demonstrates that the respondent engaged in a discriminatory practice ... ***with***

9

KCP-4441036-1
Case 3:12-cv-00616   Document 62   Filed 01/20/14   Page 9 of 11 PageID #: 560

*malice or with reckless indifference* to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a (emphasis added). In *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), the Supreme Court held that "[t]he very structure of § 1981a suggests a congressional intent to authorize punitive awards in only a subset of cases involving intentional discrimination." *Kolstad*, 527 U.S. at 534, 119 S.Ct. 2118.

Here, Plaintiff has no evidence of "malice" or "reckless indifference." What is more, Rock-Tenn is entitled to the *Kolstad* defense, as it had in place and enforced a widely-publicized anti-harassment policy, i.e. it made a good faith effort to comply with the law. For these reasons, punitive damages should not be submitted to the jury.

Respectfully Submitted,

**HUSCH BLACKWELL LLP**

/s Hillary L. Klein
Hillary L. Klein          BPR No. 024988
Caroline B. Stefaniak     BPR No. 025710
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
423.757.5950
423.266.5499 (fax)
Hillary.klein@huschblackwell.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was filed via the ECF system, which will cause it to be served upon Plaintiff's counsel identified below, on this 20th day of January, 2014:

Heather Moore Collins
COLLINS LAW FIRM
2002 Richard Jones Rd, Suite 200-B
Nashville, TN 37215


Attorney for Plaintiff

/s/ Hillary L. Klein
Hillary L. Klein