IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

JEFFRY L. SMITH,                          )
                                          )
                    Plaintiff,            )
                                          )
        vs.                               )        Case No. 3:12-cv-0616
                                          )        Judge Nixon
ROCK-TENN SERVICES, INC.,                 )
                                          )
                    Defendant.            )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
AND MOTION FOR NEW TRIAL
[Fed. R. Civ. P. 50, 59]**

        Defendant Rock-Tenn Services, Inc. ("Rock-Tenn") respectfully renews its motion for
judgment as a matter of law under Fed. R. Civ. P. 50(b) on Plaintiff's Title VII and THRA claims
on the grounds that there is insufficient evidence that the alleged harassment was based on
Plaintiff's sex, that it was objectively so severe and pervasive as to alter a reasonable person's
terms of employment, or that Rock-Tenn failed to take prompt and appropriate corrective action.
As an additional basis regarding Plaintiff's THRA claim, Rock-Tenn requests that the Court grant
it judgment as a matter of law based on the statute of limitations.

        In the alternative, if the Court does not grant Rock-Tenn's motion for judgment as a matter
of law on Plaintiff's Title VII and THRA hostile environment sexual harassment claims, Rock-
Tenn requests a new trial pursuant to Fed. R. Civ. P. 59(a) because of Plaintiff's introduction of
inflammatory and highly prejudicial evidence that the Court ordered not be introduced. Should the
Court grant Rock-Tenn's motion for judgment as a matter of law, Rock-Tenn asks that the Court
make a conditional ruling on its motion for a new trial, pursuant to Fed. R. Civ. P. 50(c).

# I.    STANDARD OF REVIEW

## A.    Standard for Judgment as a Matter of Law

Fed. Rule Civ. P. 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law. *Id.* "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under Rule 50(a)." 9B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2537. Judgment as a matter of law on a specific issue is appropriate when, viewing the evidence in the light most favorable to the nonmovant, (1) "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," or (2) the nonmovant's position on that issue represents "a claim or defense that cannot under the controlling law be maintained." Fed. R. Civ. Proc. 50(a); *Diamond v. Howd,* 288 F.3d 932, 935 (6th Cir. 2002) (citations omitted).

## B.    Standard for New Trial

Fed. R. Civ. P. 59 alternatively authorizes the court to grant a new trial. The standard for granting a new trial is more lenient than the standard for a motion under Rule 50. *See* 9A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2531. Pursuant to Rule 59(a), the court may "grant a new trial on all or some of the issues – and to any party – [] after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir. 1998).

The Sixth Circuit has interpreted Rule 59 to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by (1) the verdict being against the weight of the evidence, (2) the damages being excessive, or (3) the trial being unfair to the moving party, i.e., the proceedings being influenced by prejudice or bias. *See Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1046 (6ᵗʰ Cir. 1996), *cert. denied sub nom., Fabianich v. Holmes,* 519 U.S. 935 (1996).

## II. THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW

### A. Standard for Judgment as a Matter of Law in Employment Cases

"A motion for judgment as a matter of law should be granted if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 502-03 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotations omitted)). "The standard for judgment as a matter of law under Rule 50 is the same as the standard for summary judgment under Rule 56." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). Under this standard, only disputes over facts that are material—*i.e.*, "those that might affect the outcome of the suit under the governing law"—should prevent the court from entering judgment. *Anderson*, 477 U.S. at 248. It is appropriate to enter judgment as a matter of law "when no disputed issues of fact exist such that reasonable minds would not differ." *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013).

### B. Plaintiff failed to present sufficient evidence that the alleged sexual harassment created a hostile work environment.

After hearing all of Plaintiff's evidence, no reasonable juror would have a legally sufficient evidentiary basis to find for Plaintiff on his sexual harassment claim. The same legal analysis applies to sexual harassment claims brought under Title VII and the THRA. *See Mitchell v. Toledo*

*Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). In order to bring a sexual harassment claim based on a hostile working environment, a plaintiff must show he was subjected to unwelcome sexual harassment, based on his sex, and the employer is liable. Broken down into its seven elements, Plaintiff is required to prove:

> (1)   he was subjected to harassing conduct from James Leonard;
>
> (2)   the harassing conduct was unwelcome;
>
> (3)   the harassing conduct was based upon Plaintiff's sex;
>
> (4)   the harassing conduct was sufficiently severe or pervasive that it created a work environment that Plaintiff actually believed was hostile or abusive;
>
> (5)   the harassing conduct was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the Plaintiff's work environment to be hostile or abusive;
>
> (6)   the Defendant knew or should have known of the sexually harassing conduct; and
>
> (7)   the Defendant failed to take prompt and appropriate corrective action, in light of the facts Defendant knew or should have known, to end the harassment upon learning about it.

*See* TR Jury Instruction No. 13; *see also Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).  At trial, Plaintiff failed to prove elements (3), (5), and (7).

## 1.    The alleged harassment was not based on Plaintiff's sex.

Plaintiff failed to prove that Leonard targeted him for harassment because of his sex, which is required to satisfy element (3).  Here, Plaintiff claims that Leonard – over a period of months – once slapped him on the rear, once grabbed him on the rear, and once "humped" him on the rear for a split second.  *See* TR at pp. 876-879, 922 and 1018.  These allegations are far less egregious than the allegations in a case in which the Eighth Circuit upheld the grant of summary judgment – a case in which the plaintiff claimed to have been "backhanded in the scrotum" by a co-worker on several occasions.  *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822 (8th Cir. 2003).  In that case, the Eighth Circuit upheld the grant of summary judgment on the grounds that the plaintiff "offered no evidence of [the co-worker's] motivation, much less that [the co-worker] was motivated by hostility

toward men." *Id.* (citing *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 501, 522 (6th Cir. 2001)). In *Harbert-Yeargin, Inc.*, the Sixth Circuit rejected a same-sex hostile-work-environment claim where the plaintiff had been grabbed or patted in the genitals or buttocks on at least two occasions, concluding the conduct was gross, vulgar male horseplay in a male workplace, but there was no proof the harasser was motivated by general hostility to the presence of men in the workplace. *Harbert-Yeargin, Inc.*, 266 F.3d at 520-22.

On this point, Justice Scalia's comments in the landmark case of *Oncale* are instructive. There, attempting to guide lower courts as to when harassment is specifically because of "sex," in a male-on-male harassment case, Justice Scalia cautioned:

> The statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. . . . We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace--such as male-on-male horseplay or intersexual flirtation--for discriminatory "conditions of employment."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (emphasis added). Justice Scalia then reasoned social context must weigh heavily in the balance. For example, in a situation in which a coach smacks a professional football player's buttocks in the locker room before he heads to the field, Scalia easily concludes this is not sexual harassment. *Id.* at 81-82. He ultimately characterizes the legal determination as one that should be obvious, stating, "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Id.* at 82.

Here, because Plaintiff alleges nothing more than "male-on-male horseplay," he fails to establish element (3)—that the harassment was based on Plaintiff's sex. Indeed, Plaintiff's

testimony that he saw Leonard also grab the rear of Clinton Gill very clearly illustrates that Leonard's conduct in the workplace falls into the category of "male-on-male horseplay" contemplated by *Oncale*. Specifically, Plaintiff testified that he saw Leonard grab Gill's rear and then put "his finger up under his nose and smelled it and looked at me kind of like, don't mess with him, he stink." TR (Doc. 106) p. 876. Plaintiff focused on the fact that he found Leonard's horseplay offensive, but failed to present any evidence that Leonard had or displayed hostility toward males in the workplace. No reasonable person would find such conduct to be anything more than "teasing or roughhousing among members of the same sex." *Oncale v.* 523 U.S. at 82.

### 2. The alleged harassment was not so severe or pervasive that it would materially alter a reasonable person's terms and conditions of employment.

Even if Plaintiff had shown the harassing conduct was based on his sex, he did not satisfy element (5), because he failed to demonstrate that a reasonable person would find that the work environment was so "permeated with discriminatory intimidation, ridicule and insult that [it was] sufficiently severe or pervasive to alter the conditions of his employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). While Plaintiff may have demonstrated that he *subjectively* found the harassment severe or pervasive, the law requires sufficient evidence that the harassment was *objectively* severe or pervasive. Because he failed to show the alleged harassment was severe or pervasive enough to materially alter a reasonable person's conditions of employment, Plaintiff has fallen short on this element.

In assessing the totality of the circumstances to determine whether alleged harassment is actionable, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The conduct is evaluated both objectively and subjectively: it "must be severe or pervasive enough that a reasonable person

would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (internal citations omitted). The alleged conduct must be extreme enough to amount to a change in the "terms and conditions of employment." *Harris*, 510 U.S. at 21. "[I]solated incidents (unless extremely serious) will not amount to" a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The Sixth Circuit has consistently rejected any invitation to convert Title VII into a "code of workplace civility." *Grace v. USCAR & Bartech Tech. Servs., LLC,* 521 F.3d 655, 679 (6th Cir. 2008). Sixth Circuit courts have found conduct similar and generally more severe than the facts of this case to be insufficient to survive even summary judgment. *See, e.g., Clark v. United Parcel Service, Inc.,* 400 F.3d 341 (6th Cir. 2005) (finding two years of "distasteful and boorish" conduct of supervisor, including of vulgar jokes, placing a vibrating pager on plaintiffs thigh, and pulling her overalls after she told him she was wearing a thong, not sufficiently severe or pervasive); *Burnett v. Tyco Corp.,* 203 F.3d 980 (6th Cir. 2000) (finding it insufficiently severe, when a co-worker placed a pack of cigarettes and a lighter inside plaintiff's brassiere strap and made lewd comments on at least two other occasions); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 790 (6th Cir. 2000) (finding one sexual advance—among several other less offensive actions— toward plaintiff "truly offensive," but insufficiently severe to create an objectively hostile environment). In *Black v. Zaring Homes, Inc.,* the Sixth Circuit affirmed the trial court's reversal of a jury verdict that the plaintiff was subjected to a hostile work environment. 104 F.3d 822 (6th Cir.), *cert. denied,* 522 U.S. 865, 118 (1997). The *Black* Court found that the incidents of offensive comments and inappropriate jokes took place fairly consistently and continually over a period of four months, but that under the totality of the circumstances, the offensive conduct was insufficient to support the jury's verdict. *See id.* at 826.

To further illustrate this point, the court in *Wheeler v. Brady Corp.*, 712 F. Supp. 2d 801, 823-24 (E.D. Wis. 2010), cites numerous Seventh Circuit cases where certain types of conduct, although inappropriate for most workplaces, likewise do not amount to a hostile work environment. *See, e.g., Saxton v. AT&T,* 10 F.3d 526, 528-35 (7th Cir. 1993) (finding no hostile work environment where a supervisor placed his hand on the plaintiff's leg above the knee several times, rubbed his hand once along the plaintiff's upper thigh, kissed her for two to three seconds until the plaintiff pushed him away, and three weeks later "lurched" at the plaintiff from behind some bushes); *Weiss v. Coca-Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir. 1993) (finding no hostile work environment where a supervisor asked the plaintiff on dates, called her a "dumb blond," put his hand on her shoulder several times, told her she was beautiful, placed "I love you" signs in her work area and attempted to kiss her in a bar); *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 463-64 (7th Cir. 2002) (considering the plaintiff's allegations that her supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer, even taken together, insufficient to create an inference of a hostile work environment); *Adusumilli v. City of Chicago,* 164 F.3d 353, 361-62 (7th Cir. 1998) (concluding "four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks," teasing, ambiguous comments, and staring and attempting to make eye contact were not sufficiently severe or pervasive); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir. 1995) (holding that one instance where the company president rubbed his foot against the plaintiff's leg and another where he grabbed the plaintiff's buttocks "crude" and "offensive," but not sufficiently severe).

The first two of the three incidents to which Plaintiff testified – an alleged slap on the rear and an alleged grab on the rear – are generally less serious than the examples above. The acts may have been unwelcome or inappropriate, but were by no measure extreme, and did not create a work

environment that a reasonable person would find to be abusive. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (explaining that "harassing acts of a continual nature are more likely to be deemed pervasive"). Even Plaintiff admitted that he would not have filed any sort of claim if the third incident had not occurred, and that he never even complained to management about the first two incidents. *See* TR at pp. 904 and 920.

Next, taking Plaintiff's version of the third incident (what has been referred to as "the Saturday incident") as true, one isolated incident of crude conduct does not rise to the level of severe, pervasive, or abusive. *See Faragher*, 524 U.S. at 788. Even if Plaintiff found it subjectively severe, a reasonable person would not find this one isolated incident hostile or abusive, or so severe as to alter the conditions of Plaintiff's employment. Plaintiff failed to present any evidence that Leonard's conduct was obviously hostile or abusive, and instead proved only conduct that classifies as juvenile behavior and "roughhousing among members of the same sex." *See Oncale*, 523 U.S. at 82 ("[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive"). As noted above, the conduct amounts to male-on-male horseplay, which should not be mistaken for behavior that is "so objectively offensive as to alter the conditions of the [plaintiff's] employment." *Id.* at 81. Plaintiff did not meet his burden under this element.

### 3. Once Rock-Tenn learned of the alleged harassment, it took prompt and appropriate corrective action.

Finally, the evidence demonstrated that Rock-Tenn took prompt and appropriate remedial action upon learning of Plaintiff's complaint, and thus Plaintiff failed to meet his burden as to element (7). To be sure, the evidence established that Rock-Tenn had no knowledge of Plaintiff's complaints until *after* the third incident (the "Saturday" incident). *See* TR at p. 904. Upon learning

of Plaintiff's complaints, Leonard was called into a meeting – a meeting with not just one manager, but a meeting attended by the four most senior managers at the plant – with General Manager David McIntosh, Plant Operations Manager Bobby Hunter, Plant Manager Scott Keck, and Human Resources Manager Wade Phillips. *See* TR at pp. 1015-1016 and 1028-1029. In that meeting, Leonard was questioned about Plaintiff's allegations. *See* TR at pp. 1028-1029. In response, Leonard denied that the Saturday incident happened in the way that Plaintiff recounted. *See* TR at p. 1028-1029. While Leonard admitted he was horsing around—that he was giving Jeff Smith a hard time—he denied "humping" him. *See* TR at pp. 1028-1029 and 1043. Leonard told management that, if there was any touch of his private area to Plaintiff's backside, it was an accidental bump. *See* TR at pp. 1017, 1028-1029, and 1077-1078. Leonard was questioned during that meeting with the four senior managers about whether he had ever – at any point in time – done anything toward Plaintiff that could be considered sexual harassment, and he denied that he had. *See* TR at pp. 1028 and 1087.

The evidence demonstrated that Rock-Tenn did not end its investigation there. Rather, Bobby Hunter and Plant Manager Scott Keck talked with employees who worked around Jim Leonard on the floor, asking them if they had seen Leonard do anything that could be construed as sexual harassment. *See* TR at pp. 1029-1033. Mr. Hunter testified that he spoke with a total of ***ten*** people when conducting the investigation, and Plaintiff was the only one to report any conduct that could even be construed as sexual. *See* TR at pp. 1035-1038 and 1165.

David McIntosh testified about how he made the decision to discipline Jim Leonard with an unpaid, two-day suspension. He explained he was faced with a he-said-he-said situation, with no witnesses and no way to figure out what really happened. *See* TR at pp. 1052-1053. He testified that he decided to discipline Jim Leonard, despite the fact there was no way to determine what really happened on that Saturday night, because the investigation revealed that Leonard had

instigated some form of a confrontation that night. *See* TR at p. 1055. He testified that he did not conclude that there was sexual harassment on that Saturday night. *See* TR at p. 1055.

Mr. McIntosh testified that he takes decisions about termination seriously, particularly because it eliminates the person's livelihood. *See* TR at pp. 1055-1056. He testified that he has never terminated an employee for a he-said-he-said or he-said-she-said incident that could not be verified through witnesses or other proof. *See* TR at pp. 1056.

Plaintiff made much noise about the fact that Mr. McIntosh did not know about the other allegations of misconduct by Leonard (two incidents involving Plaintiff and one involving Roper -- all of which occurred before the March 2011 warning and all of which involved patting/grabbing on the rear (*See* TR at pp. 1018-1019)) when making his disciplinary decision. But that ignores the fact that Mr. McIntosh *did* know that an investigation had been made into Plaintiff's allegations, and that the investigation did not substantiate that Leonard had engaged in sexual harassing behavior. *See* TR at pp. 1042-1043 and 1045-1046.

Mr. McIntosh's lack of knowledge could be characterized, at worst, as "mere negligence." As the Sixth Circuit held, an employer is not liable for "mere negligence" in responding to a complaint, but is liable only if its response "manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (citations omitted). Given that all except for the alleged Saturday incident occurred before the March 2011 warning, that Leonard adamantly denied to McIntosh that the Saturday incident occurred as described by Plaintiff, and that all nine of the ten individuals interviewed during the investigation (i.e. all except Plaintiff) denied knowledge of any misconduct by Leonard of a sexual nature, Rock-Tenn's act of giving Leonard a two-day suspension cannot possibly constitute indifference or unreasonableness, even if the Court assumes McIntosh "should

have known" about the prior incidents.[1]  In sum, Plaintiff's attempt to persuade the Court that discharge was the ***only*** appropriate remedy ignores the "mere negligence" versus indifference/unreasonableness standard.

Similarly, Plaintiff's argument about Rock-Tenn's "failure to follow its own policies" was unsupported.  Human Resources Manager Wade Phillips testified that the Murfreesboro plant had not yet adopted all of the Rock-Tenn policies and forms, and thus there was no evidence that management "failed to follow their own policies."  *See* TR at p. 964.  Further, Mr. Phillips testified that the goal of the investigation was not to "prepare a lot of paperwork."  *See* TR at p. 961. Rather, according to Mr. Phillips, the goal was to discover the facts.  *See id.*  That Rock-Tenn did not precisely follow certain recommended steps is unimportant.  "The law does not require that investigations into sexual harassment complaints be perfect.  Rather, to determine whether the remedial action was adequate, the [Court] must consider whether the action was 'reasonably calculated to prevent further harassment.'"  *Knabe v. Boury Corp.*, 114 F.3d 407, 412-13 (3d Cir. 1997) (citing *Saxton v. AT&T Co.,* 10 F.3d 526, 535 (7th Cir. 1993); *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir. 1991); *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir. 1983)).  Courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th

---

[1] This is consistent with the testimony of Mr. McIntosh: that knowledge of those prior reports would not have changed his decision because he would still be unable to conclude that the Saturday incident occurred as alleged by Plaintiff.  *See* TR at p. 1054-1055.  As he testified, even if he had known Plaintiff had slapped or grabbed employees on the rear in the past, that would not have caused him to believe that he had "humped" Plaintiff.  *See* TR at p. 1059.

Cir. 1997)); *see also id.* at 298-99 ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer."). What matters is that Rock-Tenn indeed conducted an investigation and took appropriate remedial action.

Plaintiff also tried to make hay with certain comments made by Mr. Phillips and Mr. Hunter about believing termination of Leonard was appropriate. But Mr. Phillips testified that his belief termination was appropriate was ***not*** based on any conclusion that Leonard had engaged in sexual harassment: he had not so concluded. *See* TR at p. 1013. Rather, he thought termination was appropriate because, while Leonard denied touching Plaintiff in the way Plaintiff alleged, Leonard admitted he engaged in horseplay. *See* TR at p. 1013. Similarly, Mr. Hunter testified that he believed Leonard should be terminated ***if*** the allegations were substantiated, but testified that the allegations were, in fact, not substantiated. *See* TR at pp. 1034 and 1037-1038.

The evidence established that Leonard received a two-day, unpaid suspension related to Plaintiff's complaint. *See* TR at p. 988. Moreover, the evidence established that a disciplinary suspension is both serious, and consistent with the progressive discipline practices at the plant. *See* TR at p. 992, 1014, 1020, and 1055. What is more, the evidence established that the discipline was, in fact, effective: Leonard worked at Rock-Tenn for two years following his receipt of the suspension, during which time not a single employee complained about him. *See* TR at p. 1166. For these reasons, Plaintiff did not meet his burden on element (7).

Because Plaintiff failed to present sufficient evidence on three of the seven elements required to prove that the alleged sexual harassment created a hostile work environment, and because the failure to prove even one required element would prevent a reasonable juror from having a legally sufficient basis to find for Plaintiff on his Title VII and THRA claims, Rock-Tenn is entitled to judgment as a matter of law on Plaintiff's Title VII and THRA claims.

**C.      Plaintiff's THRA claim is barred by the statute of limitations.**

After hearing all of Plaintiff's evidence, there was no legally sufficient evidentiary basis to allow Plaintiff's THRA claim to proceed for jury consideration, as the evidence demonstrated the claim was barred by the statute of limitations.  An action for a violation of the THRA must be filed "within one (1) year after the alleged discriminatory practice ceases."  Tenn. Code Ann. § 4-21-311(d).  Under the THRA statute of limitations, if a plaintiff "can point to one act forming part of [his] claim that occurred within the one-year period before [he] filed suit . . . , [his] Complaint is timely and the Court may consider all alleged acts of harassment." *Theus v. Glaxosmithkline*, 2010 WL 1780215, at *4 (W.D. Tenn. Apr. 29, 2010).[2]

Plaintiff filed his Complaint on June 15, 2012.  (Doc. No. 1.)  Plaintiff presented no evidence that he suffered any acts of harassment by Leonard within one year of that date.  According to Plaintiff's evidence, the last date on which he suffered an alleged act of harassment was June 4, 2011.  *See* TR at p. 884.  Because the alleged harassment ceased more than a year before Plaintiff filed his Complaint, Plaintiff's THRA claim is barred by the statute of limitations.

To the extent Plaintiff argues that the statute of limitations on a THRA claim does not begin to run until remedial action is taken against the alleged harasser, (*see* Doc. No. 96, Pl.'s Trial Br. on THRA Stat. of Lim.), this argument is contrary to the applicable law.  Plaintiff has presented no case in which the statute of limitations was held to run from the date of disciplinary action by the employer rather than from the end of the alleged harassment.  (*See id.*)  Even in *Morgan*, cited by the Plaintiff for his argument that the statute does not start to run until disciplinary action is taken,

---

[2] In compliance with Local Rule 7.01(e)(5), a copy of each unreported decision cited in this Memorandum is attached as an exhibit to the Memorandum.

the Court looked only at discriminatory acts against the plaintiff, not at disciplinary action against alleged harassers:

> Morgan alleged that during the time period that he worked for Amtrak he was "consistently harassed and disciplined more harshly than other employees on account of his race." . . . The EEOC issued a "Notice of Right to Sue" on July 3, 1996, and Morgan filed this lawsuit on October 2, 1996. While some of the allegedly discriminatory acts about which Morgan complained occurred within 300 days of the time that he filed his charge with the EEOC, many took place prior to that time period.

*Morgan*, 536 U.S. at 105-06.

Plaintiff's argument is further contradicted by *Haggard v. McCarter*, 2008 WL 276485 (E.D. Tenn. Jan. 30, 2008), in which the alleged harassment stopped around the same time as the employer's remedial action, but the court drew its conclusion regarding the statute of limitations from the date on which the harassing acts ceased, not from the date of the remedial action. *Id.* at *5. In *Haggard*, the plaintiff told the Human Resources Manager that his supervisor had sexually harassed him by making inappropriate statements and physical contact. *Id.* at *1. The Human Resources Manager concluded that verbal discipline of the supervisor was sufficient, and the entire department underwent sexual harassment training. *Id.* The plaintiff acknowledged that after his complaint and the sexual harassment training, the supervisor did not make any more remarks to him of a sexual nature. *Id.* at *5. The District Court held that "more than a year lapsed between the *last alleged harassing conduct* and commencement of this suit . . . . Accordingly, Plaintiff Haggard's sexual harassment claim is time barred." *Id.* (emphasis added). It was thus the ceasing of the harassment, and not the verbal discipline or sexual harassment training, that started the running of the statute of limitations.

In fact, the statute of limitations can and does begin to run even when the employer takes no remedial action at all. *See, e.g., Nicholson v. City of Clarksville*, 113 Fair Empl. Prac. Cas. (BNA) 912, 2011 WL 4729759, at *4 (M.D. Tenn. Oct. 5, 2011) (THRA claim is barred by statute of

limitations; employer took no disciplinary action against harassers). If it were otherwise, the statute of limitations would never start to run in cases in which a plaintiff made baseless complaints of harassment and the employer rightfully decided not to take any remedial action. Such a rule, if it existed, would encourage employers to take disciplinary action against employees even when the employer concluded the employee had done nothing wrong. This is simply not the law. Plaintiff has not presented, and cannot present, any precedent for his argument that the THRA statute of limitations does not start to run until remedial action is taken against the alleged harasser. Plaintiff's THRA claim is barred by the statute of limitations.

Compensatory damages for Plaintiff's Title VII claim are capped at $300,000. *See* 42 U.S.C. 1981a(b)(3)(D). As reflected on the Verdict Form, the jury awarded Plaintiff $307,000 in compensatory damages. *See* Verdict Form. If the Court denies Rock-Tenn's motion for judgment as a matter of law on Plaintiff's hostile working environment claims but grants Rock-Tenn's motion as to the THRA statute of limitations, the current $307,000 award will exceed the Title VII damages cap by $7,000. *See* 42 U.S.C. 1981a(b)(3)(d). In that event, Rock-Tenn respectfully requests that the compensatory damage award be reduced by $7,000 pursuant to the statutory cap.

## III. THE COURT SHOULD GRANT A NEW TRIAL BASED ON PLAINTIFF'S INTRODUCTION OF INFLAMMATORY EVIDENCE THAT THE COURT ORDERED NOT BE INTRODUCED.

If the Court does not grant Rock-Tenn judgment as a matter of law on Plaintiff's Title VII and THRA claims, the Court should set aside the verdict and order a new trial. "A motion for a new trial is addressed to the sound discretion of the trial judge." *Nat'l Polymer Products, Inc. v. Borg-Warner Corp.*, 660 F.2d 171, 178 (6th Cir. 1981).

A new trial is appropriate where one party repeatedly violates a court's in limine ruling regarding evidence, resulting in prejudice to the other party. *See French v. Clarksville Stave & Lumber Co.*, No. 11-386-DLB-CJS, 2014 WL 222008, at *4 (E.D. Ky. Jan. 21, 2014). A new trial

is also appropriate where one party is allowed to introduce irrelevant evidence that prejudices the other party. *See Covington v. MCI Worldcom Network Servs. Inc.*, 93 Fed. Appx. 837, 843 (6th Cir. 2004) (ordering new trial based on introduction of irrelevant, apparent "smoking gun" evidence in discrimination case). In this case, a new trial is appropriate due to Plaintiff's repeated references to evidence the Court had instructed Plaintiff to refrain from introducing without first advising the Court and getting permission, and Plaintiff's introduction of irrelevant, prejudicial evidence. *See id.*; *see also Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, 732 F. Supp. 2d 727, (E.D. Mich. 2010) (ordering new trial based on misconduct of counsel, including repeated violations of trial court's orders excluding evidence); *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 826 (N.D. Okla. 2007) (ordering new trial based, in part, on the attorney's "blatant disregard" for the court's in limine rulings).

>    **A.    A new trial is warranted because Plaintiff violated the Court's Order in limine regarding post-employment circumstances.**

Rock-Tenn moved in limine to exclude evidence about the circumstances of Plaintiff's separation, post-Rock-Tenn period of unemployment, medical bills, and financial difficulties (Doc. No. 63, § II). Rock-Tenn argued therein, in its supplemental brief (Doc. No. 88), and at the motion in limine hearing that testimony about lost wages and emotional distress tied to Plaintiff's subsequent period of unemployment is inadmissible given the Court's prior ruling as a matter of law that there was no constructive discharge. As argued by Rock-Tenn, *Betts* is instructive on this issue. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461 (6th Cir. 2009). In *Betts*, the Sixth Circuit held that plaintiffs may not recover lost wages when their discharges were lawful. The appellate court upheld the trial court's amendment of the jury's award of lost wages, quoting the trial court as follows:

>    [I]t would be erroneous for the Court to permit these three Plaintiffs to recover lost wages when their termination was deemed lawful. Since they were not

wrongfully terminated, Costco has correctly identified a clear error of law in the jury's award for lost wages. Accordingly, the jury award must be amended immediately to exclude the award of lost of wages to Lewis, Amour and Thomas.

*Id.* at 475 (quoting district court opinion). The Court of Appeals continued as follows:

> In further support of its reasoning, the district court noted that several federal courts have adopted a similar analysis regarding the nonavailability of lost wages as damages in the context of a meritorious hostile-work-environment claim without a finding of wrongful termination. *See, e.g., Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 317 (3d Cir. 2006) (holding that a hostile-work-environment claim alone in the absence of a successful constructive-discharge claim is insufficient to support an award for lost wages); *Mallinson–Montague v. Pocrnick,* 224 F.3d 1224, 1236–37 (10th Cir. 2000) (same).
>
> The employees have not identified any authority, state or federal, that undermines the district court's reasoning.

*Id.* Further, Rock-Tenn argued that *Betts* also stands for the proposition that Plaintiff cannot recover for emotional distress tied to his job loss:

> Costco's first argument is that none of the preceding testimony establishes that the emotional distress suffered by [the plaintiffs] "flow[ed] from" a violation of the [law]….As to Lewis, Costco is clearly correct. There is no material evidence in the record regarding any emotional distress that Lewis suffered as a result of Costco's hostile work environment. Her distress flowed instead from the financial difficulties she faced after her nondiscriminatory discharge. Nor does Lewis provide any authority that would allow her to recover on the basis of emotional distress caused by her lawful termination. The district court therefore erred as a matter of law in upholding the jury's award compensating Lewis for her emotional distress.

*Betts*, 558 F.3d at 472 (internal citations omitted).

This Court deferred ruling on the motion in limine on this issue, but specifically instructed counsel for the parties not to introduce any evidence regarding the circumstances of Plaintiff's separation and/or other issues following his separation from employment without first informing the Court about the same outside the presence of the jury. *See* Doc. 94. And, the Court specifically instructed counsel not to raise such issues in opening statements. *See* TR at p. 808. Despite that, Plaintiff discussed the same in the opening statement and repeatedly elicited testimony on the issue

throughout trial.  *See, e.g.,* TR at p. 832 (Opening: "And you're going to hear how this sort of affected him for not just the time that it happened, but for like a year, over a year when he had to get counseling and [] on medication."); TR at p. 844 (Opening: "He was able [sic] to come back to work."); TR at p. 890 (Plaintiff: "I just – I just couldn't – couldn't go back."); TR at pp. 895-896 (Plaintiff: "There for about a year and a half I just sit at home mostly."); TR at p. 897 (Plaintiff: "I didn't have insurance or anything anymore."); TR at pp. 899-900 (after the Court instructed Plaintiff's counsel to move on following an objection by Defendant's counsel that Plaintiff's counsel was violating the Motion in Limine Order, Plaintiff's counsel immediately asked Plaintiff his feelings about returning to work); TR at pp. 899-901 (Plaintiff testified that he "probably wouldn't have ever went to work" if he hadn't started taking Trazadone a year or more after the alleged harassment); TR at pp. 1002-1003 (Again after being instructed by the Court to "move on," Plaintiff elicited testimony from Mr. Phillips about Plaintiff quitting his job); TR at p. 1004 (Plaintiff's counsel questioned Mr. Phillips about a "change in Mr. Smith's employment status"); TR at pp. 1126, 1128, 1136, and 1138 (Plaintiff's counsel elicited testimony from Kermicle that Plaintiff was unable to return to work); TR at pp. 1137-1138 (Kermicle testified about Plaintiff's concerns about his financial situation and lack of insurance). Rock-Tenn addressed concerns with the Court again at TR p. 1135, but the Court allowed the evidence to come in.

The foregoing testimony should have been excluded as irrelevant under Fed. R. Evid. 402. What is more, such evidence – even if it were relevant (which is denied) – is highly prejudicial and likely resulted in jurors engendering sympathy for Plaintiff due to his financial condition during his period of unemployment.  In other words, any "probative value [was] substantially outweighed by the danger of unfair prejudice," and therefore the evidence should not have been introduced.  Fed. R. Evid. 403.  (*See* Doc. 63.)

Because evidence of Plaintiff's post-employment circumstances was repeatedly and continually introduced, if the Court does not grant Rock-Tenn's Motion for Judgment as a Matter of Law, it should order a new trial.

**B.      A new trial is warranted because Plaintiff disregarded the Court's Order in Limine regarding other bad acts by Leonard.**

Rock-Tenn also moved in limine for an instruction excluding evidence regarding alleged bad acts by Leonard directed towards others – acts about which Rock-Tenn was not aware and which Plaintiff did not witness. (Doc. 63). The Court denied that Motion, ruling that "'the factfinder may consider similar acts of harassment *of which the plaintiff becomes aware* during the course of his or her employment, even if the harassing acts were directed at others or occurred outside the plaintiff's presence' in hostile work environment cases." Doc. 87 (emphasis added), *citing Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008). Implicit in the Court's ruling – and in the *Hawkins* case – is that similar acts of harassment that the Plaintiff did not learn about during his employment and about which the employer was not aware may ***not*** be considered by the factfinder.

Plaintiff, however, ignored that part of the Court's order. Indeed, Plaintiff ignored the restriction in opening statements, and then over and over again throughout trial. *See, e.g.,* TR at p. 836 ("So you're going to hear from Jim Leonard, who's the harasser in this case. . . . He's admitted to mooning other men in the workplace, pinching them, poking them, prodding them and grabbing them, even though there were several men, he admitted, had told him to stop and not touch them like that."); TR at p. 906 (Plaintiff: "me and others . . . [f]our others."); TR at p. 929 (Plaintiff: "That's just two of us. There's three more."); TR at p. 940 (Plaintiff: "Five people in total, come on."); TR at p. 937 (Plaintiff: "That was actually the second time. There was another guy he did before that . . . ."); TR at p. 1063 (Roper: "I know he had touched a few more."); TR at 1069 (Defendant's counsel objected and

court allowed all the acts towards others to come in); TR at pp. 1075-1076 and 1087-1090 (Plaintiff's counsel elicited testimony from Leonard about other bad acts).

Evidence of other bad acts by Leonard that Plaintiff did not know about and about which Rock-Tenn was not aware are not relevant under Fed. R. Evid. 402, and therefore should not have been presented to the jury. Further, even if relevant (which is denied), any "probative value of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." Fed. R. Evid. 403; *see also Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000) (vacating the district court's judgment for plaintiff, because it admitted evidence of discrimination against other employees, explaining that the evidence created "mini-trials," which were not probative of whether the plaintiff faced discrimination); *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 155-56. (quoting *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir.1984) (finding that other employees' testimony that they were fired for being "too old" in an age discrimination case was not admissible, in part, because even the "strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age").

In *Schrand*, the Sixth Circuit reversed the jury's verdict for the plaintiff and ordered a new trial, because the district court erred in admitting two other employees' "me too" evidence. *Id.* The court found that the other employees' testimony was irrelevant, but explained that even if it was minimally relevant, "the impact of the two former employees' testimony would be great," and while it had no "direct bearing on the issue to be decided . . . [it] embellished the [plaintiff's] circumstantial evidence," and "offered an emotional element that was otherwise lacking as a basis for a verdict in [plaintiff's] favor." *Id.* at 156. Finally, the court concluded that testimony about treatment of other employees, which was "arguably the strongest evidence in plaintiff's favor at

trial," "tended to confuse the issue by focusing the jury's attention on two totally unrelated events," and was therefore inadmissible under Rule 403. *Id.* at 156-57.

As with the plaintiff in *Schrand*, and as outlined in Rock-Tenn's motion in limine (Doc. 63), the inquiry for the jury when deciding Plaintiff's hostile environment claim should have been what Plaintiff *himself* experienced and whether Rock-Tenn's response to *Plaintiff's* complaint was appropriate. As such, with the exception of the conduct Plaintiff observed (related to Gill) and the report Rock-Tenn had previously received (from Roper), evidence of other alleged bad acts by Leonard should be have been excluded as not relevant, unfairly prejudicial, or because it confused the issue for the jury.[3] *See* Fed. R. Evid. 401;

_____

[3]Plaintiff was unaware of the other incidents of harassment (other than one incident involving Kendrick Roper) until after the fact. Thus, those situations could not be offered to establish Plaintiff's subjective state of mind. *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (excluding consideration of evidence unknown to plaintiff at time in considering harassment claim, stating plaintiff "may only rely on evidence relating to harassment of which she was aware during the time she was allegedly subject to a hostile work environment"); *Weger v. City of Ladue*, 500 F.3d 710, 736 (8th Cir. 2007) (holding similarly).

Nor is there any evidence that Rock-Tenn was aware of any of those incidents (other than one involving Mr. Roper), either when Plaintiff reported the alleged of conduct of Leonard toward him or during the remainder of Plaintiff's employment with Rock-Tenn. As for alleged harassment by a non-supervisory employee, the case here, Rock-Tenn can only be liable for conduct of which it was aware or should have been aware. Thus, for purposes of Plaintiff's claim of harassment, including Rock-Tenn's response to it, incidents of Leonard's conduct toward individuals other than Plaintiff (other than the one documented instance with Mr. Roper) are irrelevant.

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724,733 (6th Cir. 2006). Also like the *Schrand* case, the evidence of Leonard's treatment of other employees—about which neither Plaintiff nor Rock-Tenn knew—added an emotional element, which was otherwise lacking from Plaintiff's experience. Because some of the arguably strongest evidence Plaintiff provided had no direct bearing on whether Plaintiff himself faced a hostile work environment, the evidence should have been excluded.

As argued in Rock-Tenn's motion in limine, the evidence also violates Fed. R. Evid. 404(b)(1) – a rule that makes evidence of a person's prior bad acts inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Thus, courts exclude evidence of a harasser's conduct toward someone else, when it is offered to prove that he or she harassed the plaintiff in the case at hand. *See, e.g., Houchins v. Jefferson County. Bd. of Educ.*, 2013 WL 811723, *2 (E.D. Tenn. Mar. 5, 2013) ("Plaintiff wishes to introduce evidence in her case-in-chief to do precisely what Rule 404(b)(1) forbids: proving that, because others were harassed in the past, she must have been harassed as well."). Because this inflammatory and highly prejudicial evidence was presented to the jury – in conflict with the Rules of Evidence and case precedent – a new trial is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, Rock-Tenn seeks judgment as a matter of law under Fed. R. Civ. P. 50(b). Alternatively, Rock-Tenn seeks a new trial. Should the Court grant Rock-Tenn's motion for judgment as a matter of law, Rock-Tenn asks that the Court make a conditional ruling on its motion for a new trial pursuant to Fed. R. Civ. P. 50(c).

DATED: March 12, 2014

Respectfully Submitted,

**HUSCH BLACKWELL LLP**

/s Caroline B. Stefaniak
Hillary L. Klein                          BPR No. 024988
Caroline B. Stefaniak                 BPR No. 025710
Randall S. Thompson                Admitted Pro Hac
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
423.757.5950
423.266.5499 (fax)
Hillary.klein@huschblackwell.com
Carrie.stefaniak@huschblackwell.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was filed via the ECF system, which will cause it to be served upon Plaintiff's counsel identified below, on this 12th day of March, 2014:

Heather Moore Collins
COLLINS LAW FIRM
2002 Richard Jones Rd, Suite 200-B
Nashville, TN 37215

Attorney for Plaintiff

/s Caroline B. Stefaniak
Caroline B. Stefaniak